## McBRIDE v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 16, 1900.)

No. 1,201.

**1. EMBEZZLEMENT—ASSISTANT POSTMASTER—INDICTMENT.**

In an indictment founded on section 1 of the act of March 3, 1875 (1 Supp. Rev. St. c. 144), which alleges that the accused was an assistant in a post office of the United States, and that a certain sum of money belonging to the United States came into his hands in his capacity as such assistant, which he thereafter embezzled, a general description of the money as consisting of so many dollars and cents is sufficient.

**2. CRIMINAL LAW—CROSS-EXAMINATION—DISCRETION OF COURT.**

The refusal to permit a witness to be cross-examined as to a matter which was not gone into in his direct examination is within the discretion of the trial court, and cannot be assigned as error.

**3. SAME—EVIDENCE—REPORTS OF POSTMASTER.**

On the trial of an assistant postmaster for embezzlement of money belonging to the United States, quarterly reports of the office, shown to be in the handwriting of the defendant, and to have been prepared by him, although signed by the postmaster, when properly certified as required by Rev. St. § 889, are admissible against the defendant to establish the amount of money with which the office was chargeable.

In Error to the District Court of the United States for the District of Utah.

The writ of error in this case is brought to review a judgment in a criminal case whereby Frank M. McBride, the plaintiff in error, was sentenced by the district court of the United States for the district of Utah to imprisonment for the term of four years in the Utah state prison for the crime of embezzlement. The count of the indictment on which a conviction was had, omitting the caption thereof, as to which no questions are raised, is as follows: "The grand jurors of the United States of America, duly impaneled, sworn, and charged to inquire within and for the district aforesaid, upon their oaths do find and present: That Frank M. McBride, at Salt Lake City, in the district aforesaid, and within the jurisdiction of this court, upon the 10th day of January, 1897, and on divers other days before said time, was then and there assistant postmaster of the post office of the United States at Salt Lake City, in the district aforesaid, and as such assistant postmaster received and had in his possession a sum of money, to wit, the sum of three thousand and seventy-two ($3,072) dollars, lawful money of the United States, and of the value of three thousand and seventy two ($3,072) dollars, the property of the United States, and unlawfully and feloniously did embezzle and wrongfully convert the same to his own use, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

John R. McBride, for plaintiff in error.

Charles O. Whittemore, U. S. Atty. (Pennel Cherrington, Asst. U. S. Atty., on the brief), for the United States.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The sufficiency of the first count of the indictment, under which the accused was convicted, was challenged in the trial court by a motion in arrest of judgment, which is the first question to be noticed. The objections to the count were that it did not sufficiently describe the

property alleged to be embezzled, and did not sufficiently state the relationship of the defendant to the United States, or show that he held any position of trust to the United States in which he could embezzle its moneys. In the case of Moore v. U. S., 160 U. S. 268, 275, 16 Sup. Ct. 294, 40 L. Ed. 422, it was held, in substance, that when 'an indictment like the one at bar—that is to say, an indictment founded on section 1 of the act of March 3, 1875 (1 Supp. Rev. St. c. 144)—alleges that the accused was an assistant, clerk, or employé in a post office of the United States, and that a certain sum of money belonging to the United States came into his hands in his capacity as such assistant, clerk, or employé, which he thereafter embezzled, a general description of the money as consisting of so many dollars and cents is sufficient, and that greater particularity of description is not essential. It is true that there are decisions in some of the state courts which hold that such a general description of the property embezzled as is contained in the present indictment is not sufficient, but the ruling in the case last cited is controlling authority. The office of assistant postmaster is recognized by law, and appropriations are made by congress for the pay of such officers. 25 Stat. 841, c. 374. In view of this fact, and in view of the allegations in the indictment showing that the accused was assistant postmaster of the post office at Salt Lake City, that he received the money in that capacity, that it was the money of the United States, and that he embezzled it, it must be held that the indictment was good and sufficient to sustain a conviction, and that the motion in arrest of judgment was properly overruled.

Another contention that should be noticed at the outset is the claim that there was no substantial evidence tending to establish the guilt of the accused, and that the court should have directed an acquittal. The bill of exceptions, however, contains testimony to the following effect: The accused was assistant postmaster at the post office at Salt Lake City, Utah, from May 1, 1895, to about January 14, 1897, C. R. Barratt being the postmaster during that period. He had also served as assistant postmaster during the term of office of the previous postmaster, A. H. Nash; that is to say, from December 1, 1892, to May 1, 1895. During the administration of C. R. Barratt as postmaster, the money which was received at the post office by the several employés from the sale of stamps, stamped envelopes, etc., was, as a rule, turned over each night to the accused, and placed in his charge. He, as well as the postmaster, had a key to the inner vault of the safe, in which the moneys of the office and postage stamps and stamped envelopes were kept, and when any of such supplies were needed for sale by other employés they were obtained generally by application to the accused. When postal moneys were deposited in bank, the deposit was made up, and deposit tickets were usually prepared by the accused, and he very frequently made the deposits in person. In short, the testimony shows that the accused, in his capacity as assistant postmaster, had as full access to all the funds of the office as the postmaster himself, and that such funds and stamps were in the joint custody of both of such officers. Of the two officers, however, the accused seems to have exercised a more constant and active

supervision over the funds, supplies, and business transactions of the office. On January 13, 1897, a post-office inspector by the name of Nichols began a careful investigation into the affairs of the post office at Salt Lake City, which resulted on that day or the day following in the ascertainment of a shortage or deficit in the funds of the office to the amount, as at first reported, of $4,071, which was subsequently reduced, however, to $3,708. A less rigid examination of the office had been made, as it seems, on or about January 2, 1897, which had not developed any deficit or a deficit to any considerable amount. On the afternoon of January 13, 1897, while the inspection was under way, and after a deficit had been discovered, the accused asked the inspector about the result of the inspection, and, on being told the amount of the shortage, said to the inspector that "he knew he was short," but he indulged in no further explanation. The same witness further testified as follows: "The 16th of January I spoke to him again about the matter. I told him there was no use saying that he did not know what became of the money, and he said he did. I suggested that he notify his folks by wire. I think he said he would." Another witness by the name of Rebentisch, who had been employed in the post office at Salt Lake City for about 10 years, testified that he had a conversation with the accused on the afternoon of January 15, 1897; that in the course of this conversation he said to the accused, "Frank, this is a pretty bad shortage of yours, and he said, 'I know I am short, but not two or three thousand dollars.'" There were some other less important facts and circumstances developed during the progress of the trial, which had a tendency, as we think, to establish the guilt of the accused; but, without referring to them in detail, it will be sufficient to say that the question of the defendant's guilt or innocence was clearly one to be determined by the jury, and that the trial court would have erred if it had directed a verdict in favor of the defendant.

Numerous errors are assigned because of the admission or exclusion of evidence. In a number of instances exceptions appear to have been taken, and error is assigned because of the exclusion of evidence which was offered by the accused, although the record shows that, after the exception was saved, the evidence was in fact admitted. This leads us to infer that the bill of exceptions is not in all respects reliable, and that, owing to a want of proper care in its preparation, it does not correctly state the rulings that were made upon the introduction of testimony. Complaint is made specially that the witness Rebentisch heretofore mentioned was not permitted, on his cross-examination by the defendant's counsel, to answer the following question: "There had been shortages in the department which had been corrected, had there not?" This question appears to have been propounded before the witness had concluded his answer to a previous interrogatory, and, as the record shows that after the question was asked, and the objection thereto sustained, the witness continued his answer to the former interrogatory, we might very well conclude that the objection to this question was sustained by the trial court, and properly sustained, because the question was deemed out of place and premature. But,

in any event, the assignment of error as respects the refusal to permit the witness to answer this question is not tenable. Rebentisch, on his direct examination, had testified to an admission made to him by the accused about the time that he was arrested, to the effect heretofore stated that he knew he was short, but not as much as two or three thousand dollars. On his cross-examination counsel for the accused was allowed to cross-examine the witness as fully as he desired with respect to the circumstances under which the admission had been made. The witness, in his direct examination, had made no statements with respect to any previous shortages that had been discovered and corrected, so that the question propounded introduced a new subject of inquiry, which had not been gone into in chief. We think that it was within the discretion of the trial judge to confine the cross-examination to matters concerning which the witness had testified on his direct examination, and that complaint cannot be made in this court of such action.

It has also been suggested that an error was committed, prejudicial to the accused, in permitting C. L. Nichols, the government inspector, to testify in rebuttal that he did not at any time in the fall of the year 1896 go to the post office in Salt Lake City late at night for the purpose of cashing a slip or order for $40, or any other sum. The reasons which appear to have prompted the offer of this testimony in rebuttal were the following: The government, in making out its case in chief, proved by a witness named Williams that on one occasion in the fall of the year 1896, about 2 o'clock in the morning, the accused had been seen to go to the inner vault in the post office, after it had been closed for the night, and open it. The accused explained this incident on the trial by saying that he did go to the inner vault of the safe on the occasion in question, but that he went there to get $40 to cash a slip or order for Capt. Nichols. In rebuttal the government called both Williams and Nichols. By the former it was shown that on the occasion of his going to the vault the accused had then said to Williams, contrary to his testimony on the trial, that he went there to get some shares of mining stock for Capt. Nichols, while by the latter it showed, as before stated, that he had never solicited the accused to cash a slip for him. We perceive no error in the admission of this testimony, and are of opinion that the testimony of both witnesses was properly received in rebuttal.

Complaint is made of the admission in evidence of certain quarterly reports which were made by Barratt as postmaster of the Salt Lake City post office, showing the condition of that office. These reports were objected to by the defendant below on the ground that they were hearsay evidence, so far as he was concerned, the same having been signed by the postmaster. It was shown, however, that these reports were in the handwriting of the accused in so far as they reported the amount of stamps and money with which the office was chargeable, and that they had evidently been prepared by him. Section 889 of the Revised Statutes makes such reports admissible in evidence in the courts of the United States in civil and criminal prosecutions when they are duly certified, as these

reports appear to have been. It cannot be successfully claimed, therefore, that either these reports or any books found in the post office at Salt Lake City which had been kept by the accused as assistant postmaster, or that had been kept under his supervision and control, were improperly admitted in evidence.

There are no other errors respecting the admission and exclusion of proof which are so assigned or of enough importance to deserve special notice.

It is finally suggested, although the point is not specially argued, in the brief, that the trial court erred in refusing to give the following instruction: · "If the jury finds that the defendant ceased to be assistant postmaster on the 9th of January, 1897, then this defendant would not be liable for any loss or shortage that might be found to exist on the 14th of January, 1897, unless it is affirmatively shown by the prosecution that the shortage did exist while this defendant was assistant postmaster." This instruction was doubtless asked in view of some testimony which tended to show that the accused ceased to be assistant postmaster on January 9, 1897. While there was a little testimony to this effect, yet there was other testimony that he continued to act as assistant postmaster until his arrest, on January 14, 1897, and if he had in fact severed his con-·nection with the post office before the latter date the fact does not seem to have been known to any of the employés of the office. The truth would seem to be that he may have been absent from the post office between January 9 and 14, 1897, a little more than usual, owing to sickness in his family, or some other cause, but the evidence would not justify the conclusion that he severed his connection with the office until his arrest. Much less would it justify the conclusion that the deficit occurred between January 9 and 14, 1897. But, even if there had been sufficient evidence on which to base the instruction, we think that the instruction, if given, might have operated to the prejudice of the defendant by leading the jury to infer that, if the shortage existed on January 9, 1897, that fact alone would warrant a conviction. The trial court submitted the case to the jury on a theory which was more favorable to the accused, telling them, in substance, that while an unexplained deficit of money in the hands of a trusted agent is strong proof of embezzlement, yet as in the case which they had to determine there was evidence which tended to show that the postmaster and the assistant postmaster had joint possession of the funds of the office, and equal access thereto, they could not say that the mere existence of a deficit threw on the accused the burden of explaining it, or as establishing his guilt of the crime of embezzlement, if the deficit was unexplained, provided they found that the postmaster and the assistant postmaster did have such joint possession and equal access to the funds of the office. The charge in other respects required the jury to be satisfied beyond a reasonable doubt that while the accused was acting in the capacity of assistant postmaster he did convert the money which had disappeared, or a part of the money, to his own use, with the intent to deprive the United States thereof permanently. They were further instructed that, if the proof did not satisfy

them of all these facts, it would be necessary to return a verdict of not guilty. Upon the whole we conclude that the case was tried without error, so far as the admission and exclusion of testimony is concerned, that the charge was substantially correct, and covered all material questions of law concerning which the jury needed advice, and that there was abundant evidence to sustain the verdict. Under these circumstances the judgment below must be affirmed, with a direction to the accused to surrender himself to the United States marshal for the district of Utah in execution of the sentence heretofore imposed by the trial court, and it is so ordered.